Case 20-02045-GLT    Doc 33    Filed 06/26/20    Entered 06/26/20 16:21:56    Desc Main
Document    Page 1 of 4
FILED
6/26/20 3:52 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| In re: | : | Case No.: | 18-20017-GLT |
| | : | Chapter: | 7 |
| Michael C. Cyrilla | : | | |
| *Debtor(s).* | : | | |
| Rosemary C. Crawford, Chapter 7 Trustee, | : | Adv. No.: | 20-02045-GLT |
| *Plaintiff(s),* | : | | |
| v. | : | | |
| Michael C. Cyrilla et al., | : | | |
| | : | Date: | 6/26/2020 |
| *Defendant(s).* | : | Time: | 11:30 |

## PROCEEDING MEMO

*MATTER:*   # 24 Motion to Disqualify Bid to Purchase Real Estate and Include Lift
filed by interested party Paul Schreiber
[Response due 6/25/20 by 4 p.m.]
# 26 - Objection filed by the chapter 7 trustee
# 29 - Objection filed by Joseph Eritano
# 32 - Objection filed by Michael Cyrilla

*APPEARANCES:*

Plaintiff:   Rosemary C. Crawford
Paul Schreiber:   Pro Se
Joseph Eritano:   Robert Goldman
Michael Cyrilla:   Mary Bower Sheats
Alan Smith:   Pro Se

*NOTES:* (11:43)

Court: As I understand it, you want to disqualify your bid and Mr. Smith's bid, and determine if there was an automotive lift included in the sale.

Schreiber: My motion is to disqualify both bids and reinstate my original bid as well. Starting with the automotive lift - after receiving the high bid I went to view the property and met with Mr. Mark Costello. He showed me through the building and said he was going to uninstall the lift and take it with him. I wanted to clarify whether the lift is part of the real estate - it's bolted to the floor and there are hydraulic lines and electrical lines going through the concrete.

Court: My understanding is that Mr. Costello purchased the lift in a bankruptcy sale in the Michael Cyrilla case.

Schreiber: Perhaps he did, but it doesn't mean it's not part of the real estate. The lift is part of the building and it's a huge part of the building. When I looked at the building it was attached to the building and that's what I was bidding on.

Court: That would be a legal determination.

Crawford: At this point, the lift was not part of the sale motion, which Mr. Schreiber drafted. I'm not sure why it wasn't

mentioned at that time.  If the lift was sold as personal property it might not be a fixture.

Schreiber: Anything that is bolted to the building with electrical lines and hydraulic lines through the concrete - it's integral to the building.  I never envisioned someone would not include it.

Sheats: Attny Bononi filed a report at [Dkt. 334-1] in the other case that confirmed that a Mr. Costello purchased a lift.

Court: I do see that - but because Mr. Bononi sold it, that doesn't mean it is or is not a fixture.  I question whether all the necessary parties are here before me.  Potentially Mr. Bononi and Mr. Costello need to be present.  This seems to be an issue that needs factual evidence.  The question of whether something is a fixture is set out in PA statutes.  Depending on the nature of circumstances, the lift may or may not be a fixture or a trade fixture.  In Ohio, a similar automotive lift was not sunk into the floor and was just bolted.  Call v. Bank of Ohio, 1992 WL 198130 at *2 (1992)   I need to understand the composition of the asset here.

Schreiber: I did notify Mr. Costello if he wanted to object to this motion and did notify Mr. Bononi as well.  Mr. Bononi noted maybe he shouldn't have included the lift as part of the sale.

Court: I do want to hear from Mr. Bononi - if the parties can reach a settlement so be it.  But if one party is claiming it's a fixture and one is not, I'm going to need evidence, pictures, and an explanation of how the lift would be removed.  Mr. Schreiber, you want to disqualify, on what legal basis are you submitting to the Court on why I should do that?

Schreiber: To put this in perspective, I don't see a distinction between Mr. Costello and Mr. Cyrilla.  They're both listed as owners.

Court: Why is that relevant? The other bidder was Mr. Smith.

Schreiber: Mr. Costello was a bidder on the lift.  He should not have been involved in bidding on the real estate or the lift because he's tied so closely to Mr. Cyrilla.  Both of them list themselves as owners of the business that still operates in the building right now.  They're also both advertising that they're looking for new employees.  Mr. Eritano, the day before the online auction, he told me Mr. Smith was going to bid up $5,000 or $10,000 and just to go along with it and I'll get it anyway.  2 to 3 minutes after the auction Mr. Costello called me and said he was unsuccessful in buying the building and wondered if I would rent to him or sell it back to him.  It didn't pass the smell test when Mr. Costello tells me he was just one the phone.  He told me word for word what happened.  He said he had his money man bidding for him.  I don't have definitive proof of a link between Mr. Smith and Mr. Costello, and there may be none, but Mr. Costello told me he was involved in bidding on the building.  He was obviously in on the call somehow.  I don't know Mr. Smith, I looked online at Mr. Costello's facebook and it seems like there is a loop of involvement that I'm not privy to.

Court: I have to make sure it's a good faith purchaser and whether the sale can close.  Part of the reason we have a higher and better offer system is to get the best amount for the assets.  The question that I have Mr. Schreiber is, are you questing the integrity of the sale or is it more who was bidding for who?

Schreiber:  I don't have an issue directly with the bidding process - I just had two phone calls that made me question who was bidding and why.

Court: Would it have made a difference to you if you were bidding against Mr. Costello?

Schreiber: It may have, yes.

Court: In what way?

Schreiber: I got caught up in the bidding a little bit, but if I had known it was Mr. Eritano bidding to try to get more money I may not have bid.  I would have felt like I was being played.

Court: You knew your initial bid was subject to higher and better?

Schreiber: Yes, I did.  But I'm not convinced the minimal advertising brought a disinterested party to the table.  I am not comfortable with all the things that were happening behind the scenes.  I don't know how Mr. Eritano received the information about there being another bidder - everything doesn't seem to be on the up and up.

Court: Part of this seems like buyer's remorse.  There is a high standard for the court to reopen a sale, and I'm disinclined. But your motion does raise a lot of questions.  Even if I re-open the sale, it would have to be go through the auction process again and there's no guarantee you'd get the property for $180,000.

Schreiber: The taxes are another $20,000 from when I put the bid in.

Court: But you are charged with knowing this.  Mr. Smith, you represented at the prior hearing that you have no connection to Mr. Cyrilla.  Is that still correct?

Smith: I met Mr. Cyrilla once and I found out about the property on the EASI website.  I've been involved in a lot of sales in this court.  Because of COVID, I was in contact with Ms. Crawford to try to see the property .  She arranged for Mr. Cyrilla to show us the property.

Court: You have no connection with any of the other parties?

Smith:  I've never met or spoken to Mr. Eritano.  I spoke to Mr. Costello about the property and I asked him if he was planning on staying or leaving and if he would consider leasing it.  I did not bid on behalf of anyone else.

Crawford:  To the extent, I don't believe there is a legal basis to reopen the sale.  Normally I wouldn't agree with this but because there is a question about the lift, if the court agrees, I'm willing to agree to refund the $18,000 deposit to Mr. Schreiber.

Court: Why is there someone operating on the premises?  This is a chapter 7 estate, I would have assumed that once the case was converted the premises is secured.  There is potential liability to the trustee and the estate if someone operates or occupies the premises.

Crawford: That is being addressed and is maybe a conversation for another time.

Court: When do we have this conversation?  I want to make it clear that when a case is converted the premise is secured and the locks are changed if necessary.  I don't want to see someone operating on a chapter 7 property.

Crawford: It's being investigated.  People do things even without authority.  I was told that no one was operating on the property.  There was a lot of different things.  My personal life has been in danger in dealing with these cases and we have to proceed cautiously.  It's really tough to deal with.

Court: I can sympathize with the difficulty.  But I am still concerned.  If there is an investigation, I would expect to see some results in the near future.

Goldman: As far as any conversations that would be hearsay.  I do know that Mr. Schreiber did reach out to Mr. Eritano and attempted to buy the property outside the bankruptcy.  Whether Mr. Eritano said there was going to be another bidder I don't know.  Even if he did say that, I don't see what impact it would have had on the sale.

Sheats: I have nothing to add.  I was assured that the property was vacant.  Whether this person was operating there I don't know.

Court:  It seems like your client still had keys and access to the property for the purpose of showing the property.  Mr. Schreiber?

Schreiber: The first issue is - I don't know how Mr. Eritano would have had Mr. Smith's name, it doesn't seem like it's appropriate.

Court: I can tell you how the sale process - you have to be pre-registered with the trustee.  Whether the trustee communicated that to Mr. Eritano I don't know and if she did it wouldn't have been improper.

Goldman: I can address that.  I got a call from the trustee wondering if my client had keys so that Mr. Smith could see the property - we don't.  And I let Mr. Eritano know a Mr. Smith may give him a call to get a verbal description.

Schreiber:  I live minutes from the building and drive past it twice a day.  I've been on the property. Every day I've seen a mountain of waste being dumped on the property - concrete, wood waste, etc.  There is at least $20,000 of clean up that will need to be done that has been dumped in the last few weeks.  I just got a quote this morning.  If these people are dumping, if they're going to take the lift, I'm concerned what else they may be taking and I'm concerned that my position as a bidder hasn't been protected.  They're just going to all their job sites and getting rid of anything they don't want.  It's a significant issue I shouldn't be faced with.  Because the property hasn't been secured I will face a $20,000 cost.  Can I come back to the issue of the lift?

Court: Do you have any more question about the relationship between Mr. Smith and the parties?

Schreiber: No. I still feel like Mr. Costello told me he had his money man in on it.

Court: The occupation of the premises is a significant concern.  Trustee Crawford, I expect you immediately after this hearing to secure the property.  The sale was advertised, competitive bidding ensued with Mr. Schreiber successful and Mr. Smith as the back up bidder.  Based on what I've heard today, Mr. Schreiber  is contesting Mr. Costello's bidding on the lift in the Cyrilla Landscaping chapter 7 case.  I will deny that objection.  It was not noticed to the trustee of the Cyrilla Landscaping case.  And that was an instance where there was an auctioneer who advertised and conducted a public sale.  There is nothing on the face of it that would suggest that the sale was not a genuine sale.  The second issue is to whether there was good faith regarding the bids at hand.  There hasn't been any evidence connecting Mr. Smith and Mr. Cyrilla.  There is no evidence of collusion.  I'm not hearing that there was any unfair advantage to challenge the integrity of the sale.  I'm not seeing evidence of fraud or that Mr. Schreiber was taken advantage of.  Some of the issue seems to be bidding more than was initially planned.  He was aware of the condition of the property and knew this was an where-is as-is sale.  And due to his proximity to the property he perhaps knew its condition better than the trustee.  With respect to things that have happened since the sale, that may be a different conversation.  That may impact the condition of the property, but does not impact the sale.  The issue with the automotive lift - that may require further development but Mr. Bononi will need to be involved in that conversation.  I will set that issue for an evidentiary hearing, if it becomes necessary.  But I say if necessary because if the sale to Mr. Schreiber does not go through it may become moot.  I will need to hear from Mr. Schreiber whether he intends to go through with the sale.  There is nothing that would rise to the level of reconsidering the sale order or reopening the bidding process, and I don't see anything that indicates fraud or collusion or unfair advantage.  I expect the trustee to give me a status report in the next 7 days.  Even though I am denying most of Mr. Schreiber's motion, the Court does appreciate his comments regarding the ongoing operation on the property.

Schreiber: Am I able to make a motion to recover those clean up costs?

Court: You and the trustee may determine that.  I view that as a post-sale, closing issue.  If there is too much of an adjustment - Trustee Crawford may very well release you from your bid and proceed with Mr. Smith's bid. But that is her call based on the merits of the claim.

Smith: I wanted to reiterate that I was not bidding on behalf of anyone else.

Court: I made my ruling on the representations of the parties, but if the parties would prefer me to take sworn testimony instead, I can do that. Hearing request for such action, I will conclude the hearing.

*OUTCOME:*

1. Motion to Disqualify Bid to Purchase Real Estate and Include Lift filed by interested party Paul Schreiber [Dkt. No. 24] is DENIED, subject to a determination of whether the automotive lift is a fixture or an item of personal property. [Chambers to issue].

2. On or before July 3, 2020, Trustee Crawford shall file a status report (a) confirming that the real estate at 519 Thorn Run Road, Moon Township PA (the "Property") has been secured and any unauthorized operations on the Property have ceased; (b) confirming whether the Trustee and Mr. Schreiber have agreed to proceed with a closing of the real estate as approved by the Court's sale order; or whether she will proceed with the back-up bid of Mr. Smith. If Mr. Schreiber proceeds with the closing and a determination is necessary as the nature of the automotive lift, Trustee Bononi shall be given notice and the Court will schedule an evidentiary hearing. [Chambers to Issue]

**DATED:**  6/26/2020